United States District Court

Western District of Michigan

Alexander Hamilton

     Plaintiff,

vs.

Chad Vorce (in his individual and
official capacities), Clyde Smith (in
his individual and official
capacities), Bruce Ferguson (in his
individual and official capacities),
City of DeWitt, Other Unknown
Does Acting as Agents for the City
of DeWitt (in their individual and
official capacities),

     Defendants.

Case no: 1:22-cv-336

Hon.

*HAMILTON: AN AMERICAN
LAWSUIT* (**i.e., COMPLAINT**)

**DEMAND FOR JURY TRIAL**

---

**Dustyn Coontz**

Attorney for Alexander Hamilton

Coontz Law

1100 W. Saginaw St. Suite 4A

Lansing, MI 48915

(517) 940-8004

dc@coontzlaw.com

**Brian G. Goodenough**

Attorney for Defendants

Foster Swift Collins & Smith PC

313 S Washington Sq.

Lansing, MI 48933

(517) 371-8147

bgoodenough@fosterswift.com

---

**JURISDICTION**

1. Under 28 U.S.C. § 1331, this Court has original jurisdiction to hear all claims "arising under the Constitution [or] laws . . . of the United States."

2. This complaint brings suit under 42 U.S.C. § 1983 and alleges violations of the U.S. Constitution.

3. Under 28 U.S.C. § 1367, this Court also has supplemental jurisdiction for "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."

4. Claims are "so related" when they "derive from a common nucleus of operative fact."[1]

5. This complaint also alleges violations of Michigan state law, but the facts supporting the state claims are the same facts supporting the federal claims.

---

[1] *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

6.  In other words, the state and federal claims derive from a common

nucleus of operative fact.

**VENUE**

7.  Venue is proper both because at least one defendant resides in this

District[2] and because the events "giving rise to the claim occurred" in

this District.[3]

**PARTIES**

8.  Plaintiff, Alexander Hamilton, resides at 4485 Fairlane Drive,

Okemos, MI 48864.

9.  Defendant Chad Vorce resides at an unknown address in Watertown

Township, Clinton County, Michigan.

10. Defendant Clyde Smith resides at an unknown address.

11. Defendant City of Dewitt is a municipality incorporated in Clinton

County.

---

[2] 28 U.S.C. § 1391(b)(1); see also 28 U.S.C. § 1391(c)(2).
[3] 28 U.S.C. § 1391(b)(2).

12. Defendant Bruce Ferguson resides at an unknown address.

## STATEMENT OF FACTS

13. Here's how an innocent person, son of a nurse / And a Black man, dropped in the middle of a forgotten spot / In mid-Michigan by providence working as a paperboy / Goes on to be held up by an officer at gun point.

14. Alexander Hamilton—his[4] name is Alexander Hamilton.

15. And Chad Vorce is the tomfool that (almost) shot him.

### *Act I*

16. On January 14, 2021, Alexander Hamilton—only 19[5]—was delivering that day's issue of the Lansing State Journal to the paper's subscribers.

17. His route took him to the area of Shadybrook Ln. and Driftwood Dr., which is in Watertown Township, Clinton County, Michigan.

---

[4] The Plaintiff's, that is.
[5] But his mind is older.

4

18. Around 7:15 am, DeWitt Police Officer Chad Vorce saw Hamilton's minivan driving in a manner that he claims to have been suspicious.

19. Upon information and belief, Vorce had at that time been an officer with the DeWitt Township Police Department for approximately 18 years.

20. Upon information and belief, Vorce had no prior "offenses" in his personnel file in those 18 years.

21. Vorce was not on duty at the time, but was instead in his own neighborhood on his way to take his minor son to school.

22. Vorce is also a volunteer reserve firefighter with the City of DeWitt, and his personal truck is equipped with emergency lights.

23. According to Vorce, there had been some theft-related crimes in his neighborhood recently.

24. Upon seeing a "frickin' Black guy"[6] in a black hoodie, Vorce became even more suspicious that Hamilton was a potential criminal.

---

[6] His words, not ours.

5

25. Vorce approached Hamilton to see what he was up to, and Hamilton responded, "I'm just doing me."

26. This explanation did not leave Vorce satisfied.

27. Vorce tried to get Hamilton's plate number but couldn't, so he called Clinton County Central Dispatch for assistance.

28. As the first line of the CAD report reads: BLK MALE IN THE AREA JUST DOING ME NEEDS CHECKED.

29. When Vorce pulled behind Hamilton, Hamilton tried to back up to ask what was going on, but Vorce also backed up.

30. Hamilton, wary of Vorce's activity, drove away to get out of the neighborhood and onto the much busier Airport Road.

31. Vorce continued to follow him.

32. Noticing he was still being followed, Hamilton again tried to back up to Vorce to speak to him.

33. Vorce claimed Hamilton was trying to ram him.

34. Seconds later, Vorce claimed Hamilton was again trying to ram him.

35. Vorce told dispatch that he was "going to go shots fired" if Hamilton did it again.

36. Hamilton pulled a U-turn partly to try to shake Vorce and partly to go back into the neighborhood to finish his paper route.

37. Again, Vorce claimed Hamilton was trying to ram him.

38. At this point, Vorce got out of his car and pulled his pistol on Hamilton.

39. Vorce identified himself as police with his gun drawn.

40. It's unclear if this was a police-issued firearm or his personal firearm.

41. Hamilton again turned his van around and drove away.

42. Vorce got back in his car and followed Hamilton, telling dispatch that this was now a priority call and that things would "turn out really bad" if help didn't arrive quickly.

43. Hamilton, fearing for his life, decided to drive somewhere public to hopefully deter violence on Vorce's part.

44. Vorce followed Hamilton to the Sunoco (AKA Tailgaters) at 3955 Ernest Way, which is in DeWitt Charter Township, Clinton County, Michigan.

45. To try to get Hamilton to stop, Vorce turned on at least his "wigwagging" headlights in his truck, and possibly his overhead emergency light too.

46. Hamilton, scared, did a few laps around the gas pumps before coming to a stop.

47. When he did, Vorce got out of his truck screaming profanities at Hamilton.

48. Amidst the profanities, he again identified himself as a police officer.

49. Vorce was wearing a reflective DeWitt Fire Department jacket.

50. Vorce again pulled his gun, looking Hamilton in the eye and aiming

no higher.

*Act II*

51. Thankfully, Vorce decided it was not time to take a shot.

52. Shortly after Vorce got out of his car, Officer Clyde Smith arrived at

the scene.

53. Smith works for the City of DeWitt Police Department.

54. None of these events took place in the City of DeWitt, and the

closest the parties got to the City was when they drove past Airport &

Herbison in Watertown Township, which is a .5 mile drive from the

City.

55. Tailgaters is a 1.4 mile drive from the City.

56. DeWitt Charter Township has its own police department.

57. Watertown Township is patrolled by both Michigan State Police and

Clinton County Sheriff's Department.

58. Yet Smith was dispatched to the scene, outside his jurisdiction, where his fellow City of DeWitt Police officer was the complainant.

59. Smith has claimed he responded because he was close to the scene and was there to assist Michigan State Police in its investigation and that he didn't know Vorce was the complainant.

60. But Smith would've known from radio traffic that Vorce—or "7602" or "602," as dispatch routinely called him—was the complainant.

61. Dispatch also said early on the call that the complainant was an off-duty City of DeWitt police officer.

62. Upon arriving on the scene, Smith observed Vorce pointing his gun at Hamilton.

63. Hamilton was unarmed, and there was no individualized articulable suspicion to indicate otherwise.

64. Despite this, Smith removed Hamilton from his van and arrested him under, citing the possibility that Hamilton committed assault with a dangerous weapon by trying to ram Vorce.

65. As Smith was in the process of arresting Hamilton, Michigan State Police Trooper Luke Shafer arrived.

66. Smith and Shafer each interviewed Hamilton and Vorce.

67. While these interviews were mostly conducted separately, Smith and Shafer continued to allow Vorce to interact with Hamilton.

68. Shafer retreated to his patrol vehicle to talk to two sergeants from the Lansing Post.

69. Shafer and both sergeants all agreed that there was no basis to arrest Hamilton for felonious assault, which Vorce complained of.

70. After a while, Vorce indicated that he did not want to press charges after all, and Smith and Shafer allowed Hamilton and Vorce to leave.

71. Hamilton was handcuffed for roughly 38 minutes before being released.

72. Around that time, an unidentified Clinton County Sheriff's Deputy arrived and began speaking to Vorce.

73. At this point it's unclear why the Deputy was there and why he arrived so late.

74. After releasing Hamilton, Smith, Shafer, and the unknown Deputy stood around and continued to allow Vorce to talk to Hamilton for an additional four minutes.

75. Roughly one hour after this series of events began, Hamilton was finally able to go free.

## CLAIMS

### I. Excessive Force Under the Fourth Amendment: The First Assault

76. Paragraphs 1.-75. are reincorporated here.

77. The Fourth Amendment of the U.S. Constitution protects against unreasonable seizures.

78. This includes the right of the people to be secure from excessive force.

79. Force is excessive when an officer's actions are objectively unreasonable.

80. It's clearly established in the Sixth Circuit that an officer pointing a gun can constitute excessive force.

81. There was no legal or factual justification for Vorce to draw his gun on Hamilton while the two were driving on Airport Road.

82. Vorce used excessive force in drawing his gun on Hamilton.

## II. Excessive Force Under the Fourth Amendment: The Second Assault

83. Paragraphs 1.-82. are reincorporated here.

84. Little changed between when Vorce first drew his gun on Hamilton and when he again drew it on Hamilton in the Tailgaters parking lot.

85. This second assault constituted excessive force.

## III. Illegal Seizure Under the Fourth Amendment

86. Paragraphs 1-85 are reincorporated here.

87. In the context of a traffic stop, law enforcement may initiate a stop when there is reasonable suspicion that criminal activity is afoot.

88. A seizure begins when a reasonable person would not feel free to leave.

89. When a traffic stop is involved, this occurs when an officer activates emergency lights.

90. Here, although Vorce was not in a marked squad car, he did identify himself as a police officer and used the emergency lights on his personal vehicle—which he uses in his capacity as a volunteer firefighter for the City of DeWitt—to effectuate a stop.

91. He did this without reasonable articulable suspicion that Hamilton committed any crime.

92. Vorce's claims to the contrary (that Hamilton tried to ram him) are not credible, but to the extent this point is argued in the future: it is an issue of fact for a jury.

## IV. False Arrest Under the Fourth Amendment

93. Paragraphs 1-92 are reincorporated here.

94. The police may only arrest someone by way of warrant, if a crime had been committed in the officer's presence, or if there is probable cause to believe the person has just committed a felony.

95. There was no warrant here.

96. Hamilton did not commit any crimes in either Vorce's or Smith's presence.

97. Likewise, Smith did not have probable cause to believe Hamilton had committed a felony.

98. Even though Vorce claimed Hamilton had committed felonious assault by trying to ram him with his minivan, there is reason to believe Smith did not believe Vorce.

99. Assuming this assertion is disputed, it is ultimately an issue of material fact for the jury to consider.

100. Both Vorce and Smith are responsible for Hamilton's unlawful arrest.

## V. False Arrest Under Michigan Law

101. Paragraphs 1-100 are reincorporated here.

102. The Michigan tort of false arrest requires that an arrest be (1) illegal and (2) unjustified because (3) the arrest is not supported by probable cause.

103. For the reasons stated in paragraphs 94.-99., both Vorce and Smith are responsible for Hamilton's false arrest.

## VI. False Imprisonment Under Michigan Law

104. Paragraphs 1.-109. are reincorporated here.

105. The Michigan tort of false imprisonment requires there to be intent of confinement and an act that either directly or indirectly results in an unjustified confinement that the plaintiff is aware of.

106. Here, Hamilton was handcuffed for 38 minutes and forced to sit in a DeWitt City patrol vehicle for much of that time.

107. Vorce and Smith intended this confinement, and the confinement was not legally justified.

108. Hamilton was keenly aware of his confinement.

109. Both Smith and Vorce are responsible for his unlawful imprisonment under Michigan law.

## VII. Racial Discrimination Under the Equal Protection Clause of the Fourteenth Amendment

110. Paragraphs 1-132 are reincorporated here.

111.  The Equal Protection Clause protects people from discrimination based on their race, both in the creation of and the enforcement of laws.

112.  This series of events escalated to where it did because Vorce was concerned about the "frickin' Black guy" in his neighborhood who did not satisfactorily explain that he was delivering newspapers while Black.

113.  ~~Implicit~~ Explicit in Vorce's statement is that he would not have been as concerned about a frickin' white guy in his neighborhood.

114.  It's also reasonable to assume that frickin' white guy would not have ultimately been pursued to a gas station and had a gun twice pulled on him and then been arrested.

115.  Vorce enforced the law—to the extent you can call it that—in a racially discriminatory way.

## VIII. Racial Discrimination Under Michigan's Constitution

116.   Paragraphs 1-115 are reincorporated here.

117.   Under the Michigan constitution, no one shall be denied the equal

protection of the laws, nor shall anyone be discriminated against due

to their race.

118.   For the reasons stated in paragraphs 112.-114., Vorce violated

Hamilton's state constitutional right to equal protection of the laws.

## IX. Racial Discrimination Under the Michigan's Elliott-Larsen Civil Rights Act (ELCRA)

119.    Paragraphs 1-118 are reincorporated here.

120.   ELCRA prohibits discrimination against race.

121.   For the reasons stated in paras 112-114 and 117., Vorce violated

Hamilton's statutory right to not be discriminated against.

## X. Intentional Infliction of Emotional Distress (IIED) Under Michigan Law

122.   IIED occurs when a defendant engages in extreme and outrageous

conduct that causes a plaintiff to suffer emotional distress.

123.   A defendant's recklessness can satisfy the "intent" element.

124.    Pulling a gun on a teenager for unsatisfactorily answering

questions about why he's in the neighborhood is extreme and

outrageous.

125.    Vorce was extremely reckless in doing this to Hamilton.

126.    Hamilton has in fact suffered emotional distress as a result of this.

## MISCELLANY

127.    Paragraphs 1-126 are reincorporated here.

128.    The Fourth Amendment is "incorporated" to the States via the

Fourteenth Amendment's Due Process Clause, so the Fourth

Amendment's prohibitions of certain government conduct apply to

state actors too.

129.    Smith was in uniform and responded to the scene in a marked

patrol car, so everything he did here was plainly under the color of

State Law.

130. Vorce claimed to have identified himself as a police officer at least twice, was wearing a City of DeWitt-issued reflective vest saying he was with the fire department, and used emergency lights to effectuate a stop.

131. Vorce was therefore acting under the color of state law.

132. The City of DeWitt is liable for each of these claims under *Monell*.

133. For any claim involving Smith, *Monell* liability is appropriate because he automatically took the side of his comrade, who was pointing a gun at a teenage boy.

134. Upon information and belief, this was done under a de facto policy to "fall in line" and "back the blue."

135. For any claim involving Vorce, his "clean" record speaks volumes.

136. It's improbable (bordering on impossible) that Vorce's actions were an isolated result of a single bad day.

137.   Yet upon information and belief, over the course of 18 years, Vorce

never had a single "offense" in his personnel file.

138.   This is indicative of policies—written or unwritten—tolerant of

excessive force, racial discrimination, and an overall disregard for the

law within the DeWitt Police Department.

139.   Bruce Ferguson has been the DeWitt Police Chief since February

2013.

140.   To the extent the City is liable, he is too.

141.   Upon information and belief, the written or unwritten policies that

led to Hamilton's victimization are emblematic of Ferguson's

acquiescence, encouragement, or implicit authorization of Vorce's

misconduct.

142.   Upon information and belief, other Does acting as agents of the

City of DeWitt also acquiesced, encouraged, or implicitly authorized

Vorce's actions.

**REQUEST FOR RELIEF**

143.   Hamilton seeks damages for the emotional and psychological injuries he has sustained as a result of being a victim of police violence for doing nothing more than existing as a Black man in Chad Vorce's neighborhood.

144.   Hamilton also seeks punitive damages for the defendants' intentional and outrageous conduct, demonstrating evil motive and a reckless or callous indifference to Hamilton's rights.

145.   Hamilton seeks attorneys' fees under 42 U.S.C. § 1988 and M.C.L. § 600.2911.

146.   Hamilton asks that Chad Vorce be enjoined from serving as a law enforcement officer until the day he dies.

**DEMAND FOR JURY TRIAL**

147.   Alexander Hamilton demands a jury trial on all issues raised in this complaint.

April 8, 2022                           /s/ Dustyn Coontz

                                        Attorney for Alexander Hamilton